IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| KATHERINE ELIZABETH RUTH AYERS, ) ) ) ) Appellant, ) ) v. ) ) UNITED STATES DEPARTMENT OF ) DEFENSE and UNITED STATES ) DEPARTMENT OF THE TREASURY, ) ) ) Appellees. ) | Civil Action No. 7:18-cv-00032<br><br>By: Elizabeth K. Dillon<br>    United States District Judge |

ON APPEAL FROM
THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION
Case Nos. BK 17-70928, AP 17-07035

**MEMORANDUM OPINION**

In 2008, appellant Katherine Elizabeth Ruth Ayers was discharged from the Air Force Reserve Officer Training Corps (ROTC) after advising her commander that she was a lesbian. The United States Air Force commenced recoupment proceedings to recover funds expended on her behalf under the ROTC program and a scholarship program known as SOAR.

In an adversary proceeding in bankruptcy court, Ayers brought claims for judicial review under the Administrative Procedure Act (APA), 5 U.S.C. § 706, alleging that the pursuit of recoupment by the United States Department of Defense (DOD) and the United States Department of the Treasury (DOT) (collectively the government) is arbitrary and capricious

because she is being treated differently than other similarly situated former ROTC participants. Ayers also alleged that recoupment violates her right to due process and equal protection under the Fifth Amendment of the Constitution. The bankruptcy court granted the government's motion to dismiss, and Ayers appealed.

The court agrees with the bankruptcy court that Ayers' claims accrued in 2008, and as a result, they are barred by the six-year limitations period set forth in 28 U.S.C. § 2401. Therefore, and for the reasons stated below, the bankruptcy court's order is affirmed.

## I. BACKGROUND

### A. Ayers' Disenrollment From Air Force ROTC

Ayers enlisted in the Air Force in July 2002. At the time, the law referred to as "Don't Ask, Don't Tell" (DADT) was in effect. *See* 10 U.S.C. § 654 (2006), *repealed by* Don't Ask, Don't Tell Repeal Act of 2010, Pub. L. No. 111-321, 124 Stat. 3515. Under this law, individuals who engaged in homosexual activities were prohibited from serving in the military but would not be denied entry or discharged unless "the member . . . stated that he or she is a homosexual or bisexual, or words to that effect." 10 U.S.C. § 654(b)(2). The implementing directive applicable to the Air Force ROTC was DOD 1304.26 ("Qualification Standards for Enlistment, Appointment, and Induction"). This Directive provided that the military will not ask about an applicant's sexual orientation because sexual orientation "is considered a personal and private matter, and is not a bar to service entry or continued service unless manifested by homosexual conduct." (Appellant's App'x 100037, Dkt. No. 12.)[1]

---

[1] After the repeal of DADT, the Air Force issued a memorandum providing that all "Airmen, regardless of sexual orientation, may serve openly in the United States Air Force. Sexual orientation remains a personal and private matter—it will not be a factor in accession, promotion, separation, or any other personnel decision-making process." (Appellant's App'x 100061.)

2

In 2005, Ayers applied for and was accepted into a scholarship program to become a commissioned officer. On August 19, 2005, Ayers signed the ROTC contract, which set forth the terms and conditions of her participation in the Air Force ROTC program and the benefits she would receive. In signing the contract, Ayers understood and agreed that to remain in the Air Force ROTC program, she had to "meet or exceed all military, academic, and medical retention standards prescribed by law and Air Force instructions." (Appellant's App'x 100046.) Further, the contract expressly stated that "homosexual conduct is grounds for disenrollment from AFROTC" and that if she was disenrolled from the Air Force ROTC as a result of homosexual conduct, she would be "required to repay all educational expenses expended on my behalf to the maximum extent permitted by law." (*Id.* at 100047.)

On April 2, 2008, in a memorandum with the subject line "Admission of Homosexuality," Ayers advised the commander of her detachment that she was a lesbian and that she was willing to finish her ROTC commitment, earn her commission as a second lieutenant, and serve on active duty. (*Id.* at 100052.)[2] On April 4, 2008, Ayers received a "Student Status Statement of Understanding" which outlined the possible consequences if she were disenrolled from the Air Force ROTC program. (*Id.* at 100053.) On April 28, 2008, Ayers was disenrolled from the Air Force ROTC program for failure to "maintain military retention

---

[2] The memorandum stated in full:

    1. I am a lesbian.

    2. I am still willing to finish my ROTC commitment, earn my commission as a second lieutenant and serve on active duty so long as I can do it as an open lesbian.

    3. Integrity first stands as the bedrock of our Air Force core values and I am admitting my homosexuality not in an attempt to get out of serving in the Air Force but instead in an attempt to live up to that core value.

(Appellant's App'x 100052.)

standards when she admitted to homosexual ideations." (*Id.* at 100055.) She was honorably discharged from the Air Force Reserves on June 11, 2008.

**B. Recoupment Procedures**

Based on her disenrollment from ROTC, the Air Force initiated scholarship recoupment procedures against Ayers on June 4, 2008. Ayers appealed the Air Force's decision to recoup ROTC scholarship costs, arguing that her prior enlistment time satisfied her debt obligation. On October 15, 2008, Ayers' appeal was denied based on the contract she signed upon entering the Air Force ROTC program and because her "prior enlistment was a fulfillment of a previous obligation and [had] nothing to do with her AFROTC contract." (*Id.* at 100060.) The denial letter explained that Ayers' "scholarship was paid towards [her] education in anticipation of commissioning as an officer," not as a "reward for . . . enlisted performance." (*Id.*)

Ayers continued her education, earning her Bachelor's degree in 2009 from Miami University and her Master's Degree in 2011 from the University of North Carolina-Greensboro. She worked as a journalist until 2014, when she was accepted into the Doctoral program in Sociology at Virginia Polytechnic Institute and State University.

On October 20, 2014, DOT issued a garnishment order against Ayers' wages from Virginia Tech. On June 3, 2015, Virginia Tech sent an "Employer Certification" to DOT confirming that Ayers' employment had ended at the end of the school year. Virginia Tech also provided a garnishment worksheet showing the amounts deducted from Ayers' salary during the 2014–15 school year. The garnishment order was terminated on June 12, 2015.

On August 21, 2015, Ayers requested debt forgiveness due to financial hardship. The record does not reflect that there was any response to this request, and debt forgiveness was not granted.

4

On October 2, 2015, Ayers received a print out from the Defense Finance and Accounting Service (DFAS) indicating that she owes $34,237.92 for the Air Force ROTC debt. On October 29, 2015, Performant Recovery, Inc. sent a letter stating that the debt she owes the Department of Defense totals $42,683.67.[3]

On February 29, 2016, a new wage garnishment order was issued to Virginia Tech.

On April 26, 2016, DOT advised Ayers that under the tax refund offset program, her tax refund of $742.00 for calendar year 2015 was being withheld and applied to the ROTC/SOAR debt.

## C. Ayers' Adversary Complaint

Ayers filed her adversary complaint on September 12, 2017. In count one, Ayers requests a declaration that the government's "decision to recoup the ROTC/SOAR expenses" from her is arbitrary and capricious because she is "being treated differently than other similarly situated former ROTC participants" without explanation for the differential treatment. (Appellant's App'x 100022.) In count two, Ayers seeks a declaration that the government's decision to recoup is arbitrary and capricious because it is based solely on her sexual preference in violation of her due process and equal protection rights under the Fifth Amendment to the Constitution. In count three, Ayers requests discharge of her debt pursuant to 11 U.S.C. § 727. In count four, Ayers requests an undue hardship discharge pursuant to 11 U.S.C. § 523(a)(8). She also asks the court to "permanently enjoin DOD from recoupment of Plaintiff's ROTC/SOAR expenses." (*Id.* at 100022–25.)

---

[3] In December 2015, Senator Tim Kaine contacted DFAS on Ayers' behalf regarding her Air Force ROTC scholarship indebtedness. By letter dated December 17, 2015, DFAS advised Senator Kaine that Ayers' debt remains valid.

**D. Bankruptcy Court's Order**

The government moved to dismiss pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Ayers responded and moved for leave to amend the complaint. In the proposed amended complaint, Ayers included a count five, which sought a declaration that the government's "decisions to continue attempting to recoup" the ROTC debt "are based solely on her sexual preference and in violation of her rights to due process and equal protection" under the Fifth Amendment. (Appellant's App'x 100145–46.)

In a memorandum opinion dated January 8, 2018, the bankruptcy court found with respect to counts one and two (and count five of the proposed amended complaint) that the Air Force's October 15, 2008 denial of Ayers' appeal of the decision to commence recoupment proceedings was the "final agency action" and the date Ayers' claim accrued. *In re Ayers*, 581 B.R. 168, 179–80 (Bankr. W.D. Va. 2018). The bankruptcy court then found that the "subsequent collection activity neither constituted separate and distinct final agency actions, nor established continuing violations." *Ayers,* 581 B.R. at 180. Therefore, the court held that counts one and two were barred by the six-year limitations period set forth in 28 U.S.C. § 2401(a).[4] *Id.* at 182. The bankruptcy court also held that count three should be dismissed as duplicative because "the dischargeability of this debt can be fully addressed within the scope of Count Four." *Id.* at 183–84. Finally, the bankruptcy court stated that Ayers "made only the thinnest of undue hardship allegations" in count four and stated that it would grant leave to "file an amended complaint specifying in further detail the facts she contends that would meet" the test for undue

---

[4] Because Ayers' motion to amend her complaint would not change the result as to counts one and two, or allow new count five to proceed, the bankruptcy court denied the motion to amend as futile. *Ayers*, 581 B.R. at 182 n.7.

6

hardship within 21 days. *Id.* at 184–85. Thus, the court granted in part and denied in part the motion to dismiss.[5]

## II. DISCUSSION

### A. Jurisdiction[6]

Ayers filed a timely notice of appeal from the bankruptcy court's order granting in part and denying in part the government's motion to dismiss. *See* Fed. R. Bankr. 8002(a)(1) ("a notice of appeal must be filed with the bankruptcy clerk within 14 days after entry of the judgment, order, or decree being appealed."). The district court's appellate jurisdiction over bankruptcy orders is governed by 28 U.S.C. § 158(a), which provides, as pertinent here, that "the district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees . . . entered in cases and proceedings referred to the bankruptcy judges under Section 157 of this title." 28 U.S.C. § 158(a)(1). Generally, an order granting a motion to dismiss an adversary proceeding is a final order. *In re Curran*, 554 B.R. 272, 278 (B.A.P. 1st Cir. 2016). There is an issue regarding finality in this case, however, because the bankruptcy court did not dismiss all of Ayers' claims.

The "concept of finality in bankruptcy cases 'has traditionally been applied in a more pragmatic and less technical way . . . than in other situations.'" *In re Computer Learning Ctrs.*,

---

[5] Specifically, the bankruptcy court denied the government's motion to dismiss for lack of subject matter jurisdiction as to counts one and two; granted the motion to dismiss counts one and two as barred by the statute of limitations; granted the motion to dismiss count three; denied the motion to dismiss count four; denied Ayers' motion to amend her complaint; and ordered that Ayers would have 21 days to file an amended complaint as to count four. (Appellant's App'x 100234.)

[6] Neither party raises this issue on appeal, but the court agrees with the bankruptcy court's finding that it had subject matter jurisdiction to hear Ayers' complaint because it is a core proceeding relating to the validity of the debt and debt dischargeability, not a personal injury tort claim. *Ayers*, 581 B.R. at 174–78. This discussion was separate from the bankruptcy court's analysis of the statute of limitations which, for the reasons explained below, also implicates the court's subject matter jurisdiction because it is a "jurisdictional condition attached to the government's waiver of sovereign immunity." *Spannaus v. United States Dep't of Justice*, 824 F.2d 52, 55 (D.C. Cir. 1987).

*Inc.*, 407 F.3d 656, 660 (4th Cir. 2005) (quoting *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1009 (4th Cir. 1986)).  Because of "the special nature of bankruptcy proceedings, which often involve multiple parties, claims, and procedures, the postponing of review by the district court and the court of appeals of discrete issues could result in the waste of valuable time and already scarce resources."  *McDow v. Dudley*, 662 F.3d 284, 287 (4th Cir. 2011).  Therefore, "orders in bankruptcy cases may be immediately appealed if they finally dispose of discrete disputes within the larger case."  *Computer Learning Ctrs.*, 407 F.3d at 660; *see also In re ASARCO, LLC*, 650 F.3d 593, 599–600 (5th Cir. 2011) ("An appealed bankruptcy order will be considered final if it constitutes either a final determination of the rights of the parties to secure the relief they seek, or a final disposition of a discrete dispute within the larger bankruptcy case.").

The court finds that the bankruptcy court's order constitutes a final determination of Ayers' right to secure the relief that she seeks in counts one and two of her complaint and count five of her proposed amended complaint: declaratory relief that recoupment is arbitrary and capricious in violation of the APA.  The court also finds that Ayers' appeal presents a discrete dispute within Ayers' adversary proceeding and overarching bankruptcy proceeding: whether Ayers' challenge under the APA to the government's pursuit of recoupment proceedings against her is untimely.  Therefore, the court finds that it has jurisdiction to adjudicate Ayers' appeal of the bankruptcy court's order dismissing these claims.

Ayers' appeal of the dismissal of count three, however, is more troublesome.  Count three sought a declaration that the ROTC/SOAR expenses are discharged under 11 U.S.C. § 727.  The bankruptcy court dismissed this claim because it added "nothing to the case."  *In re Ayers*, 581 B.R. at 184.  The bankruptcy court reasoned that the claim was superfluous in light of count four, which was "a cause of action brought under Section 523(a)(8).  There is no question the debt at

8

issue is an obligation 'to repay funds received as an educational benefit, scholarship, or stipend' within the scope of Section 523(a)(8) such that the dischargeability of this debt can be fully addressed within the scope of Count Four." *Id.* at 183–84.[7] As noted above, the bankruptcy court denied the government's motion as to count four, and granted Ayers leave to amend. Therefore, the bankruptcy court's order does not represent a final judgment with respect to the issues presented by count three which, in the bankruptcy court's view, could be raised and addressed under the rubric of count four. Consequently, the court finds that it lacks jurisdiction to address the bankruptcy court's dismissal of count three.

**B. Standard of Review**

In general, the standard of review of a bankruptcy appeal in district court is the same standard used when an appellate court reviews a district court proceeding. *See* 28 U.S.C. § 158(c)(2) (providing that a bankruptcy appeal "shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts"). The district court reviews the bankruptcy judge's findings of fact under the "clear error" standard. *In re Taneja*, 743 F.3d 423, 429 (4th Cir. 2014). In contrast, the bankruptcy court's conclusions of

---

[7] Section 523(a)(8) provides, in pertinent part, as follows:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt . . . (8) unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for—
>
> (A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
>
> (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
>
> (B) any other educational loan that is a qualified education loan . . . incurred by a debtor who is an individual.

9

law are subject to de novo review. *Id.* The district court "may affirm, modify, or reverse a bankruptcy court's judgment, order, or decree or remand with instructions for further proceedings." *Harman v. Levin*, 772 F.2d 1150, 1153 n.3 (4th Cir. 1985).

**C. Ayers' Claims are Barred by the Statute of Limitations for APA Claims**

The APA waives the sovereign immunity of the United States for claims seeking relief other than monetary damages. *Hostetter v. United States*, 739 F.2d 983, 985 (4th Cir. 1984). APA claims are subject to the general statute of limitations under 28 U.S.C. § 2401(a), which provides that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." A complaint under the APA for judicial review of agency action is a "civil action" within the meaning of § 2401(a). *Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 186 (4th Cir. 1999). "Unlike an ordinary statute of limitations, § 2401(a) is a jurisdictional condition attached to the government's waiver of sovereign immunity, and as such must be strictly construed." *Spannaus v. United States Dep't of Justice*, 824 F.2d 52, 55 (D.C. Cir. 1987).

"Conduct becomes reviewable under the APA upon 'final agency action,' 5 U.S.C. § 704, in other words, 'when the agency has completed its decisionmaking process, and when the result of that process is one that will directly affect the parties.'" *Jersey Heights*, 174 F.3d at 187 (quoting *Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992)). Two conditions generally must be satisfied for an agency action to be final. *See U.S. Army Corps. of Eng'rs v. Hawkes Co.*, 136 S. Ct. 1807, 1813 (2016). First, the challenged action must mark the consummation of the agency's decisionmaking process. *Id.* (citing *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)). This means that the action "must not be of a merely tentative or interlocutory nature," *Bennett*, 520 U.S. at 178, such that judicial review of the action would "disrupt the orderly process of

adjudication," *Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71 (1970). Second, the challenged action must determine the rights and obligations of a party or cause legal consequences. *Hawkes Co.*, 136 S. Ct. at 1813 (citing *Bennett*, 520 U.S. at 177–78). In other words, it must have a "sufficiently direct and immediate" impact on the aggrieved party and a "direct effect on [its] daily business." *Abbott Labs. v. Gardner*, 387 U.S. 136, 152 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977); *see also Sackett v. EPA*, 566 U.S. 120, 126–27 (2012) (finding that an EPA compliance order "has all the hallmarks of APA finality that our opinions establish" because it "determined rights or obligations[,]" "legal consequences . . . flow[ed] from the issuance of the order[,]" and "issuance of the compliance order . . . marks the consummation of the agency's decisionmaking process"). The law in this area is "hardly crisp." *Rhea Lana, Inc. v. Dep't of Labor*, 824 F.3d 1023, 1027 (D.C. Cir. 2016). Finality precedent "lacks many 'self-implementing, bright-line rule[s],' given the 'pragmatic' and 'flexible' nature of the inquiry as a whole." *Id.* (quoting *Nat'l Ass'n of Home Builders v. U.S. Army Corps. of Eng'rs*, 417 F.3d 1272, 1279 (D.C. Cir. 2005), and citing *Hawkes Co.*, 136 S. Ct. at 1815).

Under the first *Bennett* condition, the denial of Ayers' appeal from the determination to pursue recoupment proceedings was the consummation of the Air Force's decisionmaking process. It was not tentative or interlocutory. *See Hawkes Co.*, 136 S. Ct. at 1814 (stating that an agency action meets the first *Bennett* condition if it is "typically not revisited"). Under the second *Bennett* condition, the agency determined Ayers' rights and obligations by finding that she was "required to repay all educational expenses expended on [her] behalf" based on the terms of the Air Force ROTC contract. (Appellant's App'x 100060.) Legal consequences flowed from this determination, which Ayers has been dealing with ever since. Therefore, the

court finds that the October 15, 2008 denial of Ayers' appeal from the initiation of recoupment proceedings constitutes final agency action for accrual purposes.

### 1. Count one

Ayers contends that count one is timely because of actions taken by the government to recoup funds since 2014, actions that occurred within the limitations period. For example, by letter dated August 21, 2015, Ayers seemed to request forgiveness of her ROTC expenses.[8] Debt relief was not granted. Ayers argues that this decision should be considered a "final agency action" after which a new statute of limitations began to run because there was a "decisionmaking process" that led to the denial. Similarly, a "decisionmaking process" led to garnishment proceedings and an offset of Ayers' tax refund. One or more of these actions, according to Ayers, should be considered a final agency action and subject to judicial review.

"[A]gency action that merely reiterates or affirms an earlier agency decision and does not affect the rights or alter the status quo of the complaining party is not considered a 'final agency action.'" *Harris v. FAA*, 215 F. Supp. 2d 209, 213 (D.D.C. 2002) (citing *Impro Prods., Inc. v. Block*, 722 F.2d 845, 850 (D.C. Cir. 1983)). Here, the apparent refusal to grant debt forgiveness in 2015 merely affirms the 2008 decision to seek recoupment in the first instance. It does not change the status quo or alter Ayers' rights in any way. *See Golden & Zimmerman, LLC v. Domenech*, 599 F.3d 426, 432 (4th Cir. 2010) (A "statement by an agency that simply restates an established interpretation 'treads no new ground' and 'leaves the world just as it found it, and thus cannot be fairly described as implementing, interpreting, or prescribing law or policy'")

---

[8] The court notes that the letter does not contain an explicit request for debt forgiveness. Instead, the letter recounts her financial situation and concludes by stating that "[r]ight now I simply have no money with which to pay it and will not for the foreseeable future." (Appellant's App'x 100097–98.) The court also notes that it is not clear from the record where Ayers sent her letter. (*Id.*) Generously construed, the letter could be viewed as a request to forgive the debt.

12

(quoting *Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 428 (D.C. Cir. 2004)); *Nat'l Ass'n of Home Builders v. Norton*, 415 F.3d 8, 15 (D.C. Cir. 2005) (explaining that agency action is non-reviewable where "the practical effect of the agency action is not a certain change in the legal obligations of a party"). For similar reasons, the actions taken to recoup expenses through garnishment, collection letters, or tax refund offsets are not final actions. They are merely reflective of the initial decision to seek recoupment.[9] The APA "does not provide judicial review for everything done by an administrative agency." *Invention Submission Corp. v. Rogan*, 357 F.3d 452, 459 (4th Cir. 2004).

Ayers cites *Berry v. U.S. Dep't of Labor*, 832 F.3d 627 (6th Cir. 2016), which she states is "informative as to whether [her] August 2015 request for debt relief triggered a final agency action." (Appellant's Reply 13, Dkt. No. 18.) In *Berry*, the court held that the Department of Labor's refusal to reopen a petitioner's claim for compensation under the Energy Employees Occupational Illness Compensation Program Act (EEOICPA) based on new evidence was a "final agency action" subject to review under the APA. Analyzing the *Bennett* factors, the court found that the denial letter "marked the end of the process for deciding whether to reopen" the claim after "plenary review of the existing administrative record, in light of the new evidence purportedly establishing Berry's entitlement to benefits." 832 F.3d at 633. The court also found that the refusal to reopen caused "legal consequences" for plaintiff "as it determined his

---

[9] Ayers cites *Wagstaff v. United States*, 105 Fed. Cl. 99 (2012). In that case, plaintiff challenged the Department of Education's administrative garnishment of her wages and offset of her federal tax returns under the Tucker Act. The court held that the "alleged illegal exaction claims accrued when the events that fixed Plaintiff's liability occurred, i.e., when the Department of Education made its respective final determinations to offset Plaintiff's tax refunds and garnish Plaintiff's wages in order to recover a debt." *Id.* at 112. This case is inapposite because it fell under the Tucker Act. The statute of limitations for Tucker Act claims is set forth in 28 U.S.C. § 2501, not § 2401.

ineligibility for compensation despite new evidence establishing his father's employment history." *Id.*

*Berry* is distinguishable for several reasons. First, while Ayers requested debt relief in 2015, the request did not generate any sort of response or official action. The failure to act can constitute agency action, *see Sackett*, 566 U.S. at 126 (citing 5 U.S.C. §§ 551(13), 701(b)(2)), but not final agency action unless it meets the *Bennett* standard. Nothing suggests that the purported decision to ignore Ayers' request for debt relief was the consummation of any sort of agency decisionmaking process. Second, even if there was an agency decision, the situation in *Berry* is different because it arose in "the realm of government benefits, where the sole purpose of the administrative proceedings is to determine an individual's entitlement to benefits." 832 F.3d at 633. In the benefits' context, the "decision not to reopen a claim, despite being presented with new evidence of entitlement, is a significant and 'concrete' injury to the claimant, distinct from the initial denial of benefits based on different evidence." *Id.* at 633–34 (citing *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 193 (1985), *overruled on other grounds by Knick v. Township of Scott*, 139 S. Ct. 2162 (2019)). The apparent refusal to grant debt forgiveness in 2015 did not impose a distinct injury separate from the 2008 decision to pursue recoupment. Third and finally, judicial review in *Berry* was "limited to the lawfulness of the refusal itself," which means that the claimant could not "perpetually litigate the merits of the agency's initial determination under the guise of requests to reopen." *Id.* Here, Ayers is attempting to do exactly that: litigate the merits of the initial determination to pursue recoupment proceedings.

The recoupment actions cited by Ayers that occurred within the limitations period are not final actions and thus did not trigger judicial review under the APA. Count one is therefore untimely.

### 2. Count two

Ayers argues that the continuing efforts to recoup ROTC expenses prevent count two from being time-barred. The continuing violation doctrine "allows for consideration of incidents that occurred outside the time bar when those incidents are part of a single, ongoing pattern of discrimination." *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007). To establish a continuing violation, the plaintiff must show that the "unconstitutional or illegal act was a fixed and continuing practice." *Nat'l Advert. Co. v. City of Raleigh*, 947 F.2d 1158, 1166 (4th Cir. 1991) (citing *Perez v. Laredo Junior College*, 706 F.2d 731, 733 (5th Cir. 1983)). In determining whether a continuing wrong exists, the "particular policies of the statute of limitations in question, as well the nature of the wrongful conduct and harm alleged, must all be considered." *Nat'l Advert.* 947 F.2d at 1167 (citing *Cooper v. United States*, 442 F.2d 908, 912 (7th Cir. 1971)).

In *National Advertising*, the claimed harm was that an ordinance restricted the use of property without just compensation. The court found that the "restriction on use and the economic loss of which National complains occurred upon enactment of the ordinance." *Id.* To counter this point, plaintiff pointed to a letter received from the city stating that nonconforming signs would need to be removed from the subject property "as a later wrongful act committed by the City within three years of National's suit." *Id.* The court rejected this argument because the letter

> was not a new wrongful act, but merely a reminder of the
> restriction placed on National's signs in 1983. It caused National

15

> no additional injury, and is not itself the source of the alleged taking. The fact that National's signs were required to be removed or brought into conformity by April 1989 was one of the *effects* of their being deemed nonconforming upon enactment of the ordinance, not a separate violation.

*Id.* (emphasis in original). As in *National Advertising*, the government's efforts to recover ROTC expenses are effects of the initial decision to seek recoupment—"foreseeable, ascertainable impact[s]," not continuing violations. *Id.* at 1168; *see also Ward v. Caulk*, 650 F.2d 1144, 1147 (9th Cir. 1981) ("A continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation.") (cited in *Nat'l Advert.*, 947 F.2d at 1166); *see also Brown Park Estates-Fairfield Dev. Co. v. United States*, 127 F.3d 1449, 1456 (Fed. Cir. 1997) ("[A] claim based upon a single distinct event, which may have continued ill effects later on, is not a continuing claim."); *Gaither v. United States*, C/A No. 5:11-953-CMC-KDW, 2012 WL 3065524, at *7 (D.S.C. July 17, 2012) ("The continuing claims doctrine does not apply, however, to a claim based on a single distinct event which has ill effects that continue to accumulate over time.").

The "particular policies of the statute of limitations in question" also support the conclusion that "no unfairness results from finding that the continuing wrong exception is inapplicable here." *Nat'l Advert.*, 947 F.2d at 1168. Claims of discrimination based on sexual orientation existed at the time of Ayers' discharge from the Air Force in 2008. *See Collins v. United States*, Civil Action No. 1:10-00778 (Fed. Cl. Mar. 25, 2014); *Hensala v. Dep't of the Air Force*, 343 F.3d 951 (9th Cir. 2002). In *Collins*, plaintiff was honorably discharged from the Air Force in 2006 based on his sexual preference pursuant to DADT. Plaintiff filed a timely discrimination claim in 2010. In *Hensala*, plaintiff was discharged from the Air Force in 1997 based on his sexual preference. After the Air Force sought recoupment of his educational debt,

16

plaintiff alleged that the recoupment order violated the APA, procedural due process under the Fifth Amendment, equal protection under the Fourteenth Amendment, and free speech under the First Amendment. As discussed in *Hensala*, Deputy Secretary of Defense John M. Deutch issued a memorandum in 1994 stating that a service member's statement of sexual orientation or "coming out statement," when not offset by evidence of celibacy, is insufficient to constitute a basis for recoupment, but the Deutch Memo further indicated that recoupment *would* be appropriate "where, based on the circumstances, it is determined that the member made the statement for the purpose of seeking separation." *Hensala*, 343 F.3d at 953. Thus, Ayers was on notice that she could be subject to recoupment, and she knew or should have known that she had viable claims within the limitations period. *See Nat'l Advert.*, 947 F.2d at 1168 (finding that "no unfairness results from finding that the continuing wrong exception is inapplicable" because plaintiff was "aware of the 1983 ordinance from at least the date of its enactment . . . participated in rulemaking proceedings prior to adoption of the ordinance and clearly knew of its terms in 1983, [was] required by law to be cognizant of the numerous restrictions placed on its signs upon the ordinance's enactment," and was "in a position" to challenge the ordinance when it was adopted); *see also Ocean Acres Ltd. v. Dare Cnty. Bd. of Health*, 707 F.2d 103, 107 (4th Cir. 1983) ("[A] 'continuing wrong' theory should not provide a means of relieving plaintiff from its duty of reasonable diligence in pursuing its claims.").

For the foregoing reasons, count two is also untimely.

### 3. Count five

In count five of Ayers' proposed amended complaint, Ayers alleges that her "disenrollment from ROTC and the continuing efforts to recoup the ROTC/SOAR expenses from Plaintiff are based solely on her sexual preference and in violation of her rights to due process

and equal protection under the 5th Amendment to the Constitution." (Appellant's App'x 100146.) Ayers argues that she is currently suffering from the "vestiges of DADT" through the recoupment of ROTC expenses by the government. (Appellant's Br. 57, Dkt. No. 11.) This claim, however, is untimely for the same reasons that counts one and two are untimely. As stated above, Ayers' claims accrued in 2008, and the actions taken by the government in pursuit of recoupment are not continuing violations or final agency actions that could trigger judicial review.

### III. CONCLUSION

For the foregoing reasons, the bankruptcy court's dismissal of counts one and two and the denial of Ayers' motion to amend will be affirmed. An appropriate order will follow.

Entered: August 30, 2019.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge